AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* <br><br> A BLACK AT&T CELLPHONE WITH NO EXTERNAL MARKINGS AND A CRACKED SCREEN IN THE CINCINNATI, OHIO FBI EVIDENCE ROOM | ) <br> ) <br> ) Case No. **1:23-MJ-00044** <br> ) <br> ) <br> ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591 | Sex Trafficking of Children or by Force, Fraud, or Coercion |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alan K. Isaacs, FBI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Facetime Video Conference _____ *(specify reliable electronic means)*.

Date: **10:34 AM, Jan 20, 2023**

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Stephanie K. Bowman, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

The property to be searched is a black AT&T cellphone with no external markings and a cracked screen recovered from Jerome Greene.  The Device is currently located at the evidence room of the FBI at 2012 Ronald Reagan Drive, Cincinnati, Ohio.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.     All records on the Device described in Attachment A that relate to violations of

**18 USC 1591** and involve Jerome Greene**,** MV-A, and/or other as of yet unknown persons

including:

      a.  Communications between named and unnamed persons in this affidavit involved in sex trafficking of minors;

      b.  Photographs, videos, or other data that show the relationship between named and unnamed persons in this affidavit;

      c.  Times, amounts, and prices of sexual acts as well as dates, places, and amounts of specific transactions;

      d.  Evidence indicating the device owner's state of mind as it relates to the crime under investigation;

      e.  The identities of the persons who own or used the device, including records that help reveal the whereabouts of such persons.

      f.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      g.  Records of Internet Protocol addresses used;

      h.  Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**For use in FBI warrants only**. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO

**IN THE MATTER OF THE SEARCH OF
A BLACK AT&T CELLPHONE WITH
NO EXTERNAL MARKINGS AND A
CRACKED SCREEN RECOVERED
FROM JEROME GREENE,
CURRENTLY LOCATED IN THE
EVIDENCE ROOM OF THE FBI AT 2012
RONALD REAGAN DRIVE,
CINCINNATI, OHIO**

Case No. __**1:23-MJ-00044**__

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Alan K. Isaacs, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

electronic device as further described in Attachment A—which are currently in law enforcement

possession, and the extraction from that property of electronically stored information described

in Attachment B.

2.      I am a Sharonville Police Officer and a Taskforce Officer with the Federal Bureau

of Investigation.  I entered on duty as an Ohio Peace Officer in 2009 and am currently assigned

to the detective division of the Sharonville Police Department.  I entered on duty as a Taskforce

Officer with the Federal Bureau of Investigation in 2021.  In this capacity, I investigate matters

involving crimes against children, human trafficking, criminal enterprises, and other violent

crimes.  During my tenure as a law enforcement officer, I have investigated a range of state and

federal criminal violations, including those involving white-collar crime, violent crime, drug trafficking and crimes against children matters. Since 2009, I have received training and have experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, and various other crimes and investigation techniques, to include several Title III investigations.

3. Along with other agents and officers of the Federal Bureau of Investigation and other law enforcement agencies, I am currently involved in an investigation of the sex trafficking of children by Jerome Greene, in addition to others as yet unidentified. This Affidavit is submitted in support of a search warrant.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a black AT&T cellphone with no external markings and a cracked screen recovered from Jerome Greene. The Device is currently located at the evidence room of the FBI at 2012 Ronald Reagan Drive, Cincinnati, Ohio.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

2

## **PROBABLE CAUSE**

7.     On August 25th, 2020, law enforcement received a Request for Information (RFI) from the National Center for Missing and Exploited Children (NCMEC) with a case number of 1394726.  This RFI was in regards to an endangered runaway juvenile, K.D. (XX/XX/2004) hereinafter Minor Victim A (MV-A), who had been missing since 06/27/2020 in Hamilton, Ohio. Based on this RFI, MV-A had a history of running away, drug/alcohol abuse and was suspected of being the victim of child sex trafficking.

8.     This RFI explained that images depicting a female visually similar to MV-A were found on the website, "Mega Personals" under profile #1125899913195241 and post ID #11033574.  This website is primarily known for soliciting prostitution.  This website allows users to create an account, add pictures/images, phone numbers, pseudonyms and to post an "ad."  Users can post multiple ads; change the location of where they are available to meet and phone numbers to contact them at.

9.     Online open source searches were conducted on various social media platforms and revealed that one of MV-A's Facebook profiles had the screenname of "KD Queen" (last updated 08/18/2020).  The Mega Personals ad (profile #1125899913195241) had images that appeared to be similar to or the same images located on the Facebook profile "KD Queen."

10.     Searches were conducted, using an ad aggregator, for the Mega Personals ad (profile #1125899913195241) which revealed 22 ads total (not including repostings) that were posted between July 24th, 2020 and August 25th, 2020.  An ad from August 25th, 2020, had a location listed as Cincinnati, Ohio with a contact phone number as 912-677-3099.  The text

3

attached to this ad read, "*no police no pimps no low ballers upscale gentleman only if you want the best unrushed service there is to offer give me a call.*" The images attached to the ad, which were visually similar to MV-A, were sexual in nature with several images of her partially nude.

11.     A further look into this ad aggregator search profile #1125899913195241 revealed three more associated phone numbers (912-508-5035, 513-550-0271 & 513-428-1328) and two different profiles (#2251799821021516 & #1125899914027393). Some of the ads for profile (#1125899913195241) showed the locations as being in Cincinnati, Dayton and Indianapolis. The two associated profiles (#2251799821021516 & #1125899914027393) had locations of Cincinnati and Columbus, OH.

12.     Profile # 2251799821021516 revealed one ad (post ID #8976138) from August 6th, 2020 (Cincinnati) that had images depicting a female visually similar to MV-A. Profile # 1125899914027393 revealed an ad (post ID #11026175) from August 8th, 2020 (Columbus) that had images depicting a female visually similar to MV-A. The phone number 912-508-5035, attached to this ad, was found to be associated with a male identified as JEROME GREENE (11/08/1992). Law enforcement located an address for Greene of 1105 Rogers St. S Pooler, Georgia 31322. Pooler, Georgia is located west of Savannah, Georgia, and the area code for the Pooler area is 912.

13.     Additional online open source searches were conducted on Greene. Greene was found to have an additional address listed as 10637 Deauville Rd, Cincinnati, Ohio 45240. Criminal records checks showed that Greene had a criminal history of Sex Trafficking to Receive Money, Prostitution (Enticement/Procurement) and Abduct for the Purpose of Prostitution.

4

14.     Two Facebook profiles, "Jay Greene" & "Jerome Greene", were located and appeared to belong to Greene.  The profile "Jay Greene" was friends with user "KD Queen" which was associated with MV-A.  The profile "Jerome Greene" was found to have significant sex trafficking indicators including use of imagery, language and terminology.  As an example, one post from a user with screenname "Bossmandomo FeddyFiend" commented, "Run up that bag feddy fiend or nothing."  In previous investigations involving MV-A, she disclosed that a male nicknamed "Fifty", was a sex trafficker.  As "Fifty" and "Feddy" appear to be phonetically and aurally similar, additional searches were conducted on screenname "Bossmandomo FeddyFiend."  However, no connections to MV-A were located at that time.

15.     On August 26th, 2020 law enforcement continued their investigation and found an ad (post ID #11033574) on Mega Personals with the phone number 912-677-3099.  This ad was posted at approximately 0514 hours of August 26th, 2020, and had a location listed as Cincinnati, Ohio.  The title of the ad read, "PYT'S INTOWN TWO GIRL SPLZ."  This ad depicted images of two young females with one visually similar to MV-A.  The second female in the images was unknown but appeared to be a juvenile as well.  An FBI Online Covert Employee (OCE) began communication with MV-A at 912-677-3099 using the phone application (app), TextNow.  The following is the documented conversation between the OCE and MV-A:

     a.  OCE: U got time today?
     b.  MV-A: Yes
     c.  OCE: When? Wat times you open
     d.  MV-A: Any time
     e.  OCE: Work til 330. Can do after. Where at
     f.  MV-A: Yes sharonvoll and do u want 2 girl or one of us
     g.  OCE: 2

    h.   MV-A: Ok 200

    i.   OCE: Bbbj?

    j.   MV-A: No condom. No everything covered.

    k.   OCE: K. How long 200 get?

    l.   MV-A: Hh. Are you police or affiliated with the law

    m.   OCE: Fuck I ain't. You?

    n.   MV-A: I'm not police

    o.   OCE: Me neither

    p.   MV-A: Ok. 2301 e Sharon rd

    q.   MV-A: Are you coming now

    r.   OCE: Work til 330. 345?

    s.   MV-A: Okay just let me know when you are otw too me sweetie

    t.   OCE: K. I'm a lil less that 15 away.

    u.   OCE: 5 minutes. Where I coming? You want a drink or sumthing?

    v.   MV-A: No I'm good. Are you here

    w.   OCE: Here

    x.   MV-A: ???

    y.   MV-A: 314

    z.   OCE: Kk. Ok.

16.    With this information, law enforcement converged on the given address, 2301 E. Sharon Rd. (The Red Roof Inn) to investigate further. As law enforcement arrived, a male subject was observed initially in the vicinity of room 314, who then walked to the ground level of the hotel. The male then walked to a Shell gas station across the street. Uniformed Sharonville officers and FBI Agents and TFOs responded to make contact with this male while other law enforcement made contact with the occupants of room 314. One female was immediately identified as MV-A, and the other minor female was identified as G.R. (XX/XX/2003), herein after Minor Victim B (MV-B).

17.     MV-A and MV-B were wearing shorts and sports bras upon contact and appeared to be under the influence of narcotics. Two cell phones, a black Samsung and an Apple iPhone, were located in the room and identified as belonging to MV-A and MV-B, respectively. Two text messages were sent by law enforcement to the ad phone number, 912-677-3099, by agents to determine if the cell phone used to communicate with the FBI OCE was present. The black Samsung identified as belonging to MV-A lit up, indicating it had received a text message. Also observed in plain view was a box of "Magnum" prophylactics. MV-A stated that she had ingested ecstasy pills and smoked marijuana prior to law enforcement's arrival. MV-B stated that she had only smoked marijuana. Both juveniles were allowed to pack their belongings and then transported to the Sharonville Police Department for further investigation.

18.     Uniformed Sharonville officers and FBI agents and TFOs made contact with the male at the Shell gas station. Officers stated the male was uncooperative, nervous and not answering basic questions. The male provided the name Kevin Gandy and a social security number which, when queried, did not coincide with each other.

19.     A query of the social security number provided by the male returned to the same individual associated with the ad aggregator phone number 912-508-5035, Jerome Greene. When the male was confronted by officers for giving false information, he admitted he was Jerome Greene and that he had open warrants for his arrest. Greene was arrested and searched, which produced two new boxes of Magnum prophylactics and a small amount of marijuana. When questioned, Greene stated that he met MV-A and MV-B on the website Plenty of Fish, and that they asked him to purchase a room for them. Greene denied knowing the two prior to this interaction or what they were doing in the room. A Red Roof Inn employee provided the room

7

registry for the hotel, which confirmed Greene had rented room 314. Greene was transported to the Sharonville Police Department for further investigation.

20.　　Once MV-A, MV-B, and Greene were at the Sharonville Police Department a state search warrant was obtained for room 314. During the search, law enforcement located the following:

      a.　Four used prophylactics

      b.　An empty box of Magnum prophylactics

      c.　Two unopened Prophylactics

      d.　One empty prophylactic wrapper

      e.　One pair of black underwear

These items as well as the black Samsung, belonging to MV-A and recovered from room 314 of the Red Roof Inn, and a black AT&T cell phone recovered from Greene upon his arrest were turned over to agents of the FBI.

21.　　During an interview, MV-B stated that she came to the hotel (Red Roof Inn), "to get money to help her family." She stated that she was going to get this money by, "doing something she did not want to do." MV-B stated that she did not know Greene and only knew he rented the room after hearing that information from law enforcement. MV-B stated that she did not want to sell drugs as a means of income, so the plan was to, "have people come to the hotel." MV-B stated that MV-A was the one communicating with individuals on the phone and was unaware that an ad was created online. MV-B stated that MV-A took provocative pictures of them using MV-A's phone but was unaware they were posted online. MV-B stated that MV-A did not discuss how much money she would get or what she was going to have to do in the room;

8

however, she knew what was going to happen. Finally, MV-B consented to a search of her cell phone. Greene and MV-A's cell phones were confiscated by law enforcement.

22.     On or about March 30th, 2021, MV-A was reported as an endangered runaway when she left a group home. A NCMEC CyberTip (CT) Report (88259644) was received by law enforcement regarding this incident.

23.     On April 12th, 2021, law enforcement, using an ad aggregator, located an ad (post ID #10785370) that depicted images of an older African American female and a younger Caucasian female. The images of the younger Caucasian female were visually similar to MV-A. The ad had a listed phone number of 859-982-5331 and a location of Elmwood Place, Ohio. The title of this ad read, "Sexy Red" and the text attached read, "*Hey guys Cumm keep warm under this nice soft ass I promise to play nice Im at home alone and need a big dick to keep this pussy company. Can that be you Im waiting incalls only.*"

24.     Based on this information an FBI OCE began communications with the listed phone number 859-982-5331. Ultimately, law enforcement made contact with the two females at 6507 Hasler Ln., apartment 8 in Elmwood Place. The females were identified as M.G. (XX/XX/1984) and MV-A. During a subsequent interview, M.G. admitted that she and MV-A were soliciting prostitution using the website, Mega Personals. A male identified as C.E. (XX/XX/1973) was also found inside of the residence. M.G. and C.E. stated that MV-A claimed to be 21 years old and that they were unaware she was a minor. MV-A was taken into custody by law enforcement.

25.     CT Report 88259644 contained information on Greene, to include several of Greene's email addresses including "Rome.G_400@Yahoo.com." Searches of the financial services platform, Cash App, for phone number 912-508-5035 were also contained in the CT Report. The corresponding Cash App account associated with this phone number was listed for a "Rome.G" with the username as "$FeddyFiend16P16."

26.     In December of 2022, a search warrant was applied for and granted by the Honorable Karen L. Litkovitz (United States Magistrate Judge) to extract the data from MV-A's cell phone. Law enforcement extracted the data using Cellebrite and upon review of said data, found the following.

27.     The phone number associated with this phone was found to be 912-677-3099. The phone was activated on 08/08/2020 at 2026 hours with Straight Talk being the service provider. This phone received two text messages from Straight Talk at this time that read, *"Welcome to Straight Talk"* and *"Congrats on your new device."*

28.     There were only four contacts listed. They were "Doggg Jay 912-508-5035," "Kara 513-807-1172," "Leg Boot 513-570-8019" and "Troy 513-545-8202." The phone number listed for "Doggg Jay" is the same phone number found to be associated with Jerome Greene in previously obtained records. In the "Timeline" tab of the extraction report, the first outgoing phone call was to "Doggg Jay", which is shown as "Jay Doggg" in all messages and calls. This first outgoing phone call was placed on 08/08/2020 at 2031 hours.

29.     From the time the phone was activated until it was confiscated by law enforcement on August 26, 2020, there were approximately 158 calls to and from Jay Doggg.

10

There were approximately 107 text messages to and from Jay Doggg. The following texts are excerpts from their conversations that indicate prostitution.

    a. 08/17/2020

        i. Sent at 1613- *"I need the condoms"*

    b. 08/18/2020

        i. Sent at 1929- *"I'm wondering how long he been up here"*

        ii. Received at 1930- *"Wtf he been here for 30min"*

        iii. Received at 1930- *"How much did he give you"*

        iv. Sent at 1931- *"80"*

        v. Received at 1931- *"Well then time is up"*

        vi. Sent at 1932- *"Ok he leaving"*

    c. 08/22/2020

        i. Sent at 0204- *"Phone dieing"*

        ii. Sent at 0204- *"And he in shower taking for ever"*

        iii. Received at 0302- *"Well then just come on do you have the money"*

    d. 08/24/2020

        i. Received at 2259- *"Wyd"*

        ii. Sent at 2304- *"Just made 40"*

(This coincides with a conversation MV-A had with phone number 910-581-7831 earlier in the day. The individual at this phone number asks, *"Hey. What would your rate be for just a bj?"* MV-A responds with, *"50."*)

    e. 08/25/2020

    i. Sent at 0003- *"Jay what do I do if my mom is panicking and crying I dont know what to do bruh"*

    ii. Sent at 0006- *"And repost me"*

    iii. Sent at 0147- *"Repost me"*

    iv. Sent at 0147- *"Repost me"*

    v. Sent at 0722- *"Post me"*

    vi. Sent at 1524- *"On are way we got the weed phone about to die"*

    vii. Sent at 2326- *"How far the uber we ready"*

f. 08/26/2020

    i. Sent at 0619- *"Bruh she bleeding u fucked her raw with blood"*

    ii. Sent at 0619- *"And he talking to her"*

    iii. Sent at 0620- *"Jay he talking to her"*

    iv. Sent at 0620- *"Man she fucking up she said I was in there"*

    v. Sent at 0624- *"He paid me he doing me now"*

    vi. Received at 0625- *"Telk her to come out and cone downstairs"*

    vii. Received at 0626- *"Wtf"*

    viii. Received at 0626- *"Tell her to come out"*

    ix. Sent at 0723- *"Bruh you need to really talk to me"*

    x. Sent at 0723- *"U is fuxking up"*

    xi. Sent at 0723- *"I'll tell u later"*

    xii. Received at 0724- *"What chu mean"*

    xiii. Sent at 0725- *"Talk to u when done"*

    xiv. Received at 0725- *"Im trying to make her comfortalbe thats all"*

    xv. Sent at 0725- *"I get it but ima just catch up later when we alone"*

    xvi. Sent at 0725- *"And dont tell her nun"*

    xvii.  Sent at 0837- *"He leaving"*

   xviii.  Received at 0838- *"Okay"*

    xix.  Received at 0838- *"Let me know when he gone"*

30.     On 08/08/2020, approximately one hour after this phone is activated, MV-A begins conversations with multiple different phone numbers. These conversations include pricing (rates) for the amount of time spent with MV-A, wanting verification pictures and asking if they are associated with law enforcement.

31.     During the timeframe of 08/08/2020 and 08/26/2020, there are hundreds of conversations between MV-A and different individuals. Again, these conversations discuss pricing, locations, sexual acts and wanting to confirm that they are not law enforcement or associated. According to the text messages, MV-A was soliciting in Sharonville, Hamilton, Indianapolis as well as traveling to various cities to perform sex acts. One example of these conversations is as follows:

    a.  Conversation with phone number 513-655-3471 on 08/09/2020 at approximately 0050 hours.

       i.  Received- *"Hi"*

      ii.  Received- *"How are you doing?"*

     iii.  Sent- *"Good u"*

     iv.  Received- *"Im doing good just horny"*

      v.  Sent- *"Haha"*

     vi.  Received- *"For sure"*

    vii.  Sent- *"How long u want??"*

   viii.  Received- *"What were your rates?"*

13

    ix.   Sent- *"Qv $80 Hhr $100 Hhr half $150 Two hhr $200"*

    x.   Received- *"That's for gfe right?"*

    xi.   Sent- *"No I don't kiss or do anything with the face and no anal"*

    xii.   Received- *"But bbfs right?"*

    xiii.   Sent- *"No with condom"*

    xiv.   Received- *"Titty fuck bb?"*

    xv.   Sent- *"Its gonna be qv so $8]"*

    xvi.   Sent- *"80"*

    xvii.   Sent- *"U cool with that"*

32.     Also in these conversations, MV-A states that she can be paid using CashApp. She gives the "$Cashtag" of "$FeddyFiend16P16" to different individuals to pay her. As previously stated, "$FeddyFiend16P16" is known to be associated with Greene. There was a screenshot found in the extraction with the "$Cashtag" of "$FeddyFiend16P16" and the account name of "Rome.G."

33.     Finally, numerous images were found in the extraction of MV-A's phone that depicted her lying on a hotel bed with her breasts and vagina exposed. There were also images of MV-A and MV-B, in what appears to be the same hotel room, wearing only a bra and underwear. The images of MV-A alone as well as the images of MV-A and MV-B were the same images found on the aforementioned MegaPersonals ads.

34.     Based on the aforementioned information, it is your affiant's belief that additional evidence will be located on Jerome Greene's cell phone that will further this investigation.

14

35.     The Device is currently in storage at the evidence room of the FBI at 2012 Ronald Reagan Drive, Cincinnati, Ohio.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

36.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also

15

include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

16

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

17

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.  Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet,

connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same

state.

37.     Based on my training, experience, and research, I know that the Device has

capabilities that allow it to serve as a wireless telephone, digital camera, portable media player,

GPS navigation device, and PDA.  In my training and experience, examining data stored on

devices of this type can uncover, among other things, evidence that reveals or suggests who

possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time.  Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.  This information can

sometimes be recovered with forensics tools.

39.     *Forensic evidence.*  As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the Device was used, the purpose of its use, who used it, and when.  There is probable cause to

believe that this forensic electronic evidence might be on the Device because:

19

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20

40.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

41.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

42.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

43.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them

publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Alan K. Isaacs
Taskforce Officer
Federal Bureau of Investigation

Subscribed and sworn to before me
on January _____20_____, 2023: **via electronic means, specifically Facetime video.**

THE HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

22

**ATTACHMENT A**

The property to be searched is a black AT&T cellphone with no external markings and a cracked screen recovered from Jerome Greene. The Device is currently located at the evidence room of the FBI at 2012 Ronald Reagan Drive, Cincinnati, Ohio.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.    All records on the Device described in Attachment A that relate to violations of

**18 USC 1591** and involve Jerome Greene**,** MV-A, and/or other as of yet unknown persons

including:

      a.  Communications between named and unnamed persons in this affidavit involved
         in sex trafficking of minors;

      b.  Photographs, videos, or other data that show the relationship between named and
         unnamed persons in this affidavit;

      c.  Times, amounts, and prices of sexual acts as well as dates, places, and amounts of
         specific transactions;

      d.  Evidence indicating the device owner's state of mind as it relates to the crime
         under investigation;

      e.  The identities of the persons who own or used the device, including records that
         help reveal the whereabouts of such persons.

      f.  Evidence of user attribution showing who used or owned the Device at the time
         the things described in this warrant were created, edited, or deleted, such as logs,
         phonebooks, saved usernames and passwords, documents, and browsing history;

      g.  Records of Internet Protocol addresses used;

      h.  Records of Internet activity, including firewall logs, caches, browser history and
         cookies, "bookmarked" or "favorite" web pages, search terms that the user
         entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**For use in FBI warrants only**. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2